**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

RYAN CAIN and AUDRA WOOD on behalf of themselves and others similarly situated,

Plaintiffs,

v.

NATIONAL HEALTH AGENTS, LLC

Defendant.

Case No.

CLASS ACTION COMPLAINT

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiffs Ryan Cain and Audra Wood (collectively referred to as the "Plaintiffs") bring this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. National Health Agents, LLC ("National Health" or "Defendant") made automated and pre-recorded telemarketing calls to cellular telephone numbers, which is prohibited by the TCPA.

3. The Plaintiffs never consented to receive the calls, which were placed to them for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

4. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

5. Plaintiff Ryan Cain is a resident of the Commonwealth of Massachusetts and this District.

6. Plaintiff Audra Wood is a resident of the state of New Hampshire.

7. Defendant National Health Agents, LLC is a Florida limited liability company with its principal place of business in Boynton Beach, FL. The Defendant has a Registered Agent of Donald Keiber at 5390 NW41 Way in Coconut Creek, FL 33073. Defendant engages in telemarketing nationwide, including into this District.

**Jurisdiction & Venue**

8. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the telemarketing call to the Plaintiff Cain was placed into this District.

**The Telephone Consumer Protection Act**

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

12. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

13. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

14. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The Growing Problem of Automated Telemarketing

15. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

16. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

17. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

18. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J.

(July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

19. Even more recently, a technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019 (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html

**Factual Allegations**

20. Defendant is in the business of selling insurance products.

21. One of Defendant's strategies for marketing its services and generating new customers is telemarketing.

22. Defendant's strategy for generating new customers involves the use of an automatic telephone dialing system ("ATDS") to solicit business.

23. Defendant uses ATDSs that have the capacity to store or produce telephone numbers to be called.

24. Defendant's ATDSs include predictive dialers.

25. Recipients of these calls, including Plaintiffs, did not consent to receive them.

26. The Defendant used this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone or respond to the text contact through a telephone call.

27. Through this method, the Defendant shifts the burden of wasted time to the consumers it calls with unsolicited messages.

Calls to Plaintiff Audra Wood

28. Plaintiff Wood is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

29. In February of 2019, Ms. Wood began receiving automated calls on her cellular telephone line (401) 524-XXX.

30. When the calls were answered, unlike on a normal call, no one promptly announced themselves. Instead, Plaintiff heard an unnatural click and pause.

31. A pre-recorded message was also used on the call indicating the use of an ATDS, as it would be illogical to hand-dial a call only to then use a pre-recorded message.

32. The Caller ID numbers for the calls were all local to the Plaintiff, which further indicated an ATDS, as it would take automated computer equipment to manipulate the Caller ID on a phone call.

33. On February 8, 2019, Ms. Wood responded to the pre-recorded message to learn more about the calling party, who was not identified in the pre-recorded message.

34. During that call, Ms. Wood was advertised the Defendant's goods and services and received an e-mail from j.pacheco@nationalhealthagents.com, an employee of the Defendant.

Calls to Plaintiff Ryan Cain

35. Plaintiff Cain is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

36. In December of 2018, Mr. Cain began receiving automated calls on her cellular telephone line (781) 435-XXX.

37. When the calls were answered, unlike on a normal call, no one promptly announced themselves. Instead, Plaintiff heard an unnatural click and pause.

38. A pre-recorded message was also used on the call indicating the use of an ATDS, as it would be illogical to hand-dial a call only to then use a pre-recorded message.

39. The Caller ID numbers for the calls were all local to the Plaintiff, which further indicated an ATDS, as it would take automated computer equipment to manipulate the Caller ID on a phone call.

40. On December 20, 2018, Mr. Cain responded to the pre-recorded message to learn more about the calling party, who was not identified in the pre-recorded message.

41. During that call, Mr. Cain was advertised the Defendant's goods and services and received an e-mail from "Jorge Castro, National Health Agents".

Allegations Common to All Calls

42. The Defendant has previously received complaints about their automated calling practices.

43. The Defendant has also received complaints to the Better Business Bureau. For example, one complaint read, "Robot calls They will not take me off their call list". *See* https://www.bbb.org/us/fl/boynton-beach/profile/health-insurance/national-health-agents-llc-0633-90408710/complaints (Last Visited February 25, 2019).

44. On information and belief, despite their local area codes, the calls did not originate from Massachusetts or Rhode Island (where the Plaintiff Wood originally obtained her cellular telephone number). Instead, the area code of the caller ID was spoofed so as to catch the attention of Plaintiffs and trick them into believing that the calls were local.

45. Defendant's purpose in making the call was to sell its services to Plaintiff.

46. Plaintiffs have never been a customer of Defendant.

47. Plaintiffs did not provide prior express written consent to receive ATDS-generated or prerecorded calls from, or on behalf of, Defendant.

48. Plaintiffs did not provide prior express consent to receive calls from Defendant.

49. The calls were not necessitated by an emergency.

50. Plaintiffs' privacy has been violated by the above-described telemarketing robocalls from, or on behalf of, Defendant. The calls were an annoying, harassing nuisance.

51. Plaintiffs and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls. The calls occupied their cellular telephone lines, rendering them unavailable for legitimate communication.

**Class Action Allegations**

52. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

53. The class of persons Plaintiffs proposes to represent is tentatively defined as:

> All persons within the United States: (a) Defendant and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

54. Excluded from the classes are the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

55. The class as defined above is identifiable through phone records and phone number databases.

56. The potential class members number at least in the thousands, since automated and pre-recorded telemarketing campaigns make calls to hundreds or thousands of individual a day. Individual joinder of these persons is impracticable.

57. Plaintiffs are a member of the proposed class.

58. There are questions of law and fact common to Plaintiffs and to the proposed classes, including but not limited to the following:

a. Whether Defendant violated the TCPA by using automated telemarketing to call cellular telephones;

b. Whether Defendant placed calls without obtaining the recipients' prior consent for the call;

c. Whether the Plaintiffs and the class members are entitled to statutory damages because of Defendant's actions.

59. Plaintiffs' claims are typical of the claims of class members. Plaintiffs' claims, like the claims of the Class arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

60. Plaintiffs are adequate representative of the class because their interests do not conflict with the interests of the classes, they will fairly and adequately protect the interests of the classes, and they are represented by counsel skilled and experienced in class actions, including TCPA class actions.

61. Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

62. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

63. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

64. Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's Automated Calling provisions

65. Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

66. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiffs and members of the Class using an ATDS and/or artificial or prerecorded voice.

67. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiffs and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

68. Plaintiffs and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

69. The Defendant's violations were negligent and/or knowing.

**Relief Sought**

For himself and all class members, Plaintiffs request the following relief:

A. Certification of the proposed Class;

B. Appointment of Plaintiffs as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Defendant and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F. An award to Plaintiffs and the Class of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiffs request a jury trial as to all claims of the complaint so triable.**

PLAINTIFFS,
By their attorneys

*/s/ Anthony I. Paronich*

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Alex M. Washkowitz
Jeremy Cohen
CW Law Group, P.C.
188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com